UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICO J. QUIROGA III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SERGEANT GRAVES, et al.,<br><br>　　　　　Defendants. | 1:16-cv-00234-DAD-GSA-PC<br><br>**ORDER FOR PLAINTIFF TO EITHER:**<br><br>　**(1)　FILE THIRD AMENDED COMPLAINT**<br><br>　**OR**<br><br>　**(2)　NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON THE DUE PROCESS CLAIM AGAINST DEFENDANT FUENTES**<br><br>**THIRTY DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT OR NOTIFY COURT** |

**I.　BACKGROUND**

　　Plaintiff Monico J. Quiroga III ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On February 19, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On November 29, 2016, the court dismissed the Complaint for failure to state a claim, with leave to amend. (ECF No. 20.) On December 23, 2016, Plaintiff filed the First Amended Complaint. (ECF No. 21.)

1

On September 29, 2017, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend. (ECF No. 33.) On October 23, 2017, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 34.)

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962,

969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III.    SUMMARY OF ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

Plaintiff is presently incarcerated at San Quentin State Prison. At the time of the events at issue in the Second Amended Complaint, Plaintiff was a pretrial detainee at the Kern County Sheriff's Detention Facility in Bakersfield, California. Plaintiff names as defendants Sergeant (Sgt.) Brenda Graves, Corporal (Corp.) Oscar Fuentes, and Gause (Classification) (collectively, "Defendants").

Plaintiff's allegations follow. On January 9, 2016, while Plaintiff was being held as a pretrial detainee, defendants Sgt. Graves, Corp. Fuentes, and Gause entered F-1 housing and instructed the inmates to stand against the wall, patted them down, and sent them to the recreation yard. Defendants then searched the unit.

On their way back in, Sgt. Graves told the inmates to line up in front of their cell doors. Plaintiff was on the top tier, cell 107, second floor. Someone yelled at the inmates to enter their cells. As they began to comply a fight broke out on the bottom tier between two inmates who were about fifteen yards below Plaintiff. Defendant Graves was between Plaintiff and the incident on the bottom tier. She (Graves) yelled, "Lock it up!," and as Plaintiff was closing his cell door with his back turned, defendant Gause fired a round from his pepper ball gun. (ECF No. 34 at 5.) Plaintiff heard a second round that hit the railing of the top tier. The first round hit the outside of Plaintiff's closed door. Plaintiff believes that defendant Gause fired the first round, and defendant Graves fired the second round. Plaintiff was not a threat to anyone, not involved in the incident, and his back was to them. Plaintiff was also on the second tier.

Plaintiff believes defendants Gause and Graves fired pepper balls at him out of retaliation for Plaintiff filing a petition or inmate grievances because Plaintiff was moved two to three hours later and housed in Administrative Segregation (Ad-Seg), isolation cell D-610, without any write-up or hearing. Plaintiff was escorted by defendant Fuentes and housed in a cell with blood, urine, and feces on the floor and walls, and vomit on the bed. Plaintiff was denied a dinner tray.

3

Due to the timing and the involvement of defendants Gause and Fuentes, Plaintiff believes he was placed in Ad-Seg out of retaliation for filing civil suit 1:15-cv-01697-AWI-MJS, and 9th Circuit case 17-15329, concerning another time when Plaintiff was investigated, isolated in Ad-Seg, falsely labeled a Mano Negra Mafioso member, and placed "in harm's way from real Security Threat Groups." (ECF No. 34 at 6.)

On January 9, 2016, Plaintiff submitted an inmate grievance and received a response stating that although he was not involved in the altercation, he was being investigated for causing a disturbance. Due to the condition of the cell, Plaintiff caught a cold and asked to receive Hepatitis and HIV blood tests.

On January 18, 2016, Plaintiff filed a second grievance. Plaintiff's cell was searched and he was released from Ad-Seg without any hearing or write-up.

Plaintiff requests monetary damages.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights.

Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### A. Due Process Claim – Fourteenth Amendment

When a detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right under the Due Process Clause to be free from punishment. Bell v. Wolfish, 441 U.S. 520, 533 (1979). While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. Id. at 537. Even if a restriction or condition may be viewed as having a punitive effect on a pretrial detainee, it is nonetheless constitutional if (1) there was no express intent to punish, (2) the restriction or condition is rationally connected to an alternative purpose, and (3) the restriction or condition is not excessive in relation to the alternative purpose. Id. at 538-39. Among the legitimate objectives recognized by the Supreme Court are ensuring a detainee's presence at trial and maintaining safety, internal order, and security within the institution. Id. at 540. In such a circumstance, governmental restrictions are permissible. United States v. Salerno, 481 U.S. 739, 748 (1987) (holding that the pretrial detention contemplated by the Bail Reform Act is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause).

A pretrial detainee may not be subjected to disciplinary action without a due process hearing to determine whether he has in fact violated a jail rule. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996); see also Bell, 441 U.S. at 535 (Fourteenth Amendment's Due Process Clause protects detainees from punishment prior to conviction); Wolff v. McDonnell, 418 U.S. 539, 564-565 (1974) (setting forth due process requirements for hearing prior to disciplinary action). Wolff requires that jail authorities allow an inmate who faces disciplinary proceedings and whose liberty interest is threatened to call witnesses in his defense, when permitting him to do so will not be unduly hazardous to institutional safety and correctional concerns. Mitchell, 75 F.3d at 525 (citing Wolff, 418 U.S. at 566.) Once a detainee has been placed in Ad-Seg,

///

"prison officials must conduct some sort of periodic review of the confinement . . . ." Madrid v. Gomez, 889 F. Supp. 1146, 1278 (N.D. Cal. 1995).

Plaintiff alleges that he was detained in an unsanitary cell for 10 days after an incident in which two other inmates in his unit were involved in an altercation. Plaintiff contends that he was not involved in the altercation and should not have been disciplined. Plaintiff was told that although he was not involved in the altercation he was being investigated for causing a disturbance. Plaintiff was not given a write-up or hearing before he was moved to the cell. After Plaintiff filed an inmate grievance he was released from Ad-Seg, without any hearing or write-up.

Placement in ad-seg pending investigation of disciplinary charges does not implicate a protected liberty interest absent a showing that the conditions of confinement constituted an "atypical and significant hardship" "in relation to the ordinary incidents of prison life." Resnick v. Hayes, 213 F.3d 443, 448–49 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997) (mere placement in ad-seg not enough to state claim after Sandin).

Here, Plaintiff's description of his Ad-Seg cell -- "with blood, urine, and feces on the floor and walls, and vomit on the bed" -- together with allegations that he was detained there for ten days and was not given a dinner tray for at least one night describes conditions that are excessive in relation to the alternative purpose of detaining Plaintiff in Ad-Seg, whether he was there for punishment or there pending an investigation. As discussed above, pretrial detainees have a substantive due process right against restrictions that amount to punishment.

Therefore, the court finds that Plaintiff states a cognizable claim for violation of due process against defendant Fuentes.

### C. Conditions of Confinement – Fourteenth Amendment

"[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence

when analyzing the rights of pre-trial detainees. See <u>Hallstrom v. City of Garden City</u>, 991 F.2d 1473, 1485 (9th Cir. 1993); <u>Pierce</u>, 526 F.3d at 1205 (9th Cir. 2008); <u>Lolli v. Cnty. of Orange</u>, 351 F.3d 410, 418-19 (9th Cir. 2003); <u>Or. Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1120 (9th Cir. 2003); <u>Gibson v. Cnty. of Washoe</u>, 290 F.3d 1175, 1187 (9th Cir. 2002); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998); <u>Carnell v. Grimm</u>, 74 F.3d 977, 979 (9th Cir. 1996); <u>Anderson v. Cnty. of Kern</u>, 45 F.3d 1310, 1312-23 (9th Cir. 1995); <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408, 1414-15 (9th Cir. 1986).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).

To state a claim against a defendant for adverse conditions of confinement using Eighth Amendment standards, Plaintiff must allege facts showing that the defendant was deliberately indifferent to a substantial risk of harm to his health or safety. <u>E.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost</u>, 152 F.3d at 1128. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." <u>Farmer</u>, 511 U.S. at 834. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. <u>Johnson</u>, 217 F.3d at 731. Second, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." <u>Farmer</u>, 511 U.S. at 837.

///

"Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson, 45 F.3d at 1314, opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995) (citing cases, see, e.g., Gee v. Estes, 829 F.2d 1005, 1006 (10th Cir. 1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); McCray v. Burrell, 516 F.2d 357, 366–69 (4th Cir. 1974) (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), *cert. denied,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); []; LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), *cert. denied,* 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973)); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985).

A conditions of confinement claim may also arise from the type of "egregious circumstances" alleged by Plaintiff in this matter. Moak v. Sacramento Cty., No. 215CV0640MCEKJNP, 2016 WL 393860, at *3 (E.D. Cal. Feb. 2, 2016), report and recommendation adopted, No. 215CV0640MCEKJNP, 2016 WL 8731337 (E.D. Cal. Mar. 4, 2016) (citing Walker v. Schult, 717 F.3d 119, 127 (2nd Cir. 2013) (citing, *inter alia*, LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972)) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days); Wright v. McMann, 387 F.2d 519, 521-22, 526 (2d Cir. 1967) (placement in cell for thirty-three days that was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, would violate the Eighth Amendment)). The Ninth Circuit also has held

the deprivation of food, drinking water, and sanitation for four days was sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Johnson, 217 F.3d at 732–733.

Here, Plaintiff alleges that defendant Fuentes escorted him to an unsanitary cell with blood, urine, and feces on the wall and floor, and vomit on the bed, where Plaintiff was detained for ten days. Plaintiff reports that he caught a cold due to the unsanitary conditions.

Plaintiff has established that the unsanitary conditions he was subjected to were sufficiently serious. However, Plaintiff's allegations are not sufficient to show that defendant Fuentes or any other Defendant was aware of the conditions in the cell and knew that Plaintiff faced a risk of serious harm. Id. at 837-45. Plaintiff alleges that he was "escorted [to the cell] by Corp. O. Fuentes." (ECF No. 34 at 6.) This is not sufficient to state an Eighth Amendment claim against defendant Fuentes. Mere negligence on the part of the prison official is not sufficient to establish a constitutional violation. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

Therefore, Plaintiff fails to state a claim for adverse conditions of confinement under the Fourteenth Amendment.

### D. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.

> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendants Sgt. Graves and Gause shot at him, and that defendant Fuentes placed him in detention in retaliation for Plaintiff exercising his rights to file petitions, grievances and court actions. There is no question that shooting someone with pepper balls or pepper spray and placing him in detention are adverse actions. However, Plaintiff alleges no facts showing that defendants Graves or Gause meant to shoot at Plaintiff or that the shooting was an adverse action against Plaintiff. It appears more likely that defendants were shooting pepper balls to gain control over the ongoing altercation between two other inmates.

Plaintiff satisfies the third element of a retaliation claim by his allegation that he exercised his First Amendment rights to file grievances, petitions, and a court action. However, Plaintiff fails to satisfy the second element, because he has not shown that any adverse action

was taken against him *because* he had exercised his First Amendment rights. Plaintiff's argument that the timing of the acts shows retaliation is unpersuasive. Just because Plaintiff files a court case against an officer, Plaintiff cannot claim that any adverse action against him by that officer is motivated by retaliation. To state a claim for retaliation Plaintiff must allege facts showing a connection between his exercise of protected rights and the adverse actions taken against him. Plaintiff has not done so.

Therefore, Plaintiff fails to state a claim for retaliation against any of the Defendants.

### E. <u>Excessive Force – Eighth Amendment Claim</u>

Plaintiff claims that excessive force was used against him when defendants Gause and Graves used "tear gas" against him. (ECF No. 34 at 4 ¶IV.) Here, Plaintiff alleges that defendant Fuentes moved Plaintiff into an unsanitary cell, with blood, urine, and feces on the wall and floor, and vomit on the bed, where Plaintiff was denied a dinner tray and detained for ten days. Plaintiff reports that he caught a cold due to the unsanitary conditions.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." <u>Id.</u> (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. <u>Id.</u> at 9; <u>see</u> <u>also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." <u>Id.</u> at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff fails to show that any of the defendants purposely used tear gas or pepper balls against him, or that he was subject to any force. Plaintiff alleges that defendants Graves and Gause shot their pepper ball guns in Plaintiff's direction, but there are no facts showing that the pepper balls struck Plaintiff, that they were used to punish Plaintiff for anything he did, or that Plaintiff suffered any harm. Plaintiff has failed to allege or show that defendant Graves or defendant Gause applied force to him in a malicious and sadistic manner. To the contrary, Plaintiff's allegations indicate the force used was applied in a good-faith effort to restore or maintain discipline against the two inmates who were fighting. Plaintiff's allegations do not show that Plaintiff suffered or sustained any serious injury as a result of Defendants shooting their pepper ball guns, or that the alleged force came close to consisting of the type of force that was "repugnant to the conscience of mankind" or constitutionally excessive under the Eighth Amendment. See Hudson, 503 U.S. at 9–10.

Therefore, Plaintiff fails to state an excessive force claim against any of the Defendants.

### F. 42 U.S.C. § 1981, 28 U.S.C. § 1331, 18 U.S.C. § 242

Plaintiff cites three statutes that Plaintiff wrote on the face of the Second Amended Complaint, which the court briefly addresses as they relate to Plaintiff's claims.

#### (1) 42 U.S.C. § 1981 – Equal Rights Under the Law

Section 1981 was meant, by its broad terms, to proscribe discrimination in making or enforcement of contracts against, or in favor of, any race. Gratz v. Bollinger, 539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003). Plaintiff does not allege a claim for discrimination
///

based on the making or enforcement of a contract. Therefore, Plaintiff fails to state a claim under 42 U.S.C. § 1981.

### (2)     18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

This criminal civil rights statute, 18 U.S.C. § 242, does not provide a private cause of action. Taebel v. Sonberg, No. 218CV00138TLNACPS, 2018 WL 558773, at *3 (E.D. Cal. Jan. 25, 2018). Therefore, Plaintiff may not proceed in this case with a claim under 18 U.S.C. § 242.

### (3)     28 U.S.C. § 1331 -- Federal Question

Section 1331 provides in its entirety: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute confers jurisdiction on the United States District Courts to hear certain causes of action, i.e., questions arising under the Constitution, laws and treaties of the United States and questions concerning deprivation or protection of civil rights. This section does not in itself create any rights but merely gives the district court power to hear the causes and act when rights are asserted under other provisions. Lyle v. Vill. of Golden Valley, 310 F. Supp. 852, 855 (D. Minn. 1970). Therefore, Plaintiff fails to state a claim for violation of 28 U.S.C. § 1331.

## V.     CONCLUSION

For the reasons set forth, the court finds that Plaintiff's Second Amended Complaint states a cognizable due process claim against defendant Fuente, but fails to state any other cognizable claims upon which relief may be granted under § 1983 against any of the Defendants. Plaintiff shall be required to either file an amended complaint, or notify the court of his willingness to proceed only on the due process claim against defendant Fuentes. If Plaintiff chooses to proceed only with the due process claim against defendant Fuentes, the court will begin the process to initiate service upon defendant Fuentes by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file

an amended complaint curing the deficiencies identified above. Plaintiff is granted leave to file a Third Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on February 19, 2016.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the prior complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

///

///

///

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a Third Amended Complaint curing the deficiencies identified in this order, or
   (2) Notify the court in writing that he does not wish to file an amended complaint and is instead willing to proceed with only the due process claim against defendant Fuentes:
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-00234-DAD-GSA-PC; and
4. If Plaintiff fails to comply with this order, this case will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **March 15, 2018**                **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE