| | |
|---|---|
| MONICO J. QUIROGA III, | 1:16-cv-00234-DAD-GSA-PC |
| Plaintiff, | **ORDER FOR PLAINTIFF TO EITHER:** |
| v. | **(1) FILE A FOURTH AMENDED COMPLAINT, OR** |
| SERGEANT GRAVES, et al., | |
| Defendants. | **(2) NOTIFY THE COURT THAT PLAINTIFF IS WILLING TO PROCEED ONLY WITH THE CLAIM FOUND COGNIZABLE BY THE COURT** |
| | **THIRTY-DAY DEADLINE TO FILE FOURTH AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

**I.    BACKGROUND**

Plaintiff Monico J. Quiroga III ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On February 19, 2016, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On November 29, 2016, the court dismissed the Complaint for failure to state a claim, with leave to amend. (ECF No. 20.) On December 23, 2016, Plaintiff filed the First Amended Complaint. (ECF No. 21.)

On September 29, 2017, the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend. (ECF No. 33.) On October 23, 2017, Plaintiff filed the Second Amended Complaint. (ECF No. 34.)

On March 15, 2018, the court screened the Second Amended Complaint and issued an order for Plaintiff to either (1) file a Third Amended Complaint, or (2) notify the court he is willing to proceed only with the due process claim found cognizable by the court. (ECF No. 37.) On March 30, 2018, Plaintiff filed the Third Amended Complaint, which is now before the court for screening. (ECF No. 39.)

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.  SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff is presently incarcerated at High Desert State Prison in Susanville, California. At the time of the events at issue in the Third Amended Complaint, Plaintiff was a pretrial detainee at the Kern County Sheriff's Detention Facility in Bakersfield, California. Plaintiff names as defendants Sergeant (Sgt.) Brenda Graves, Corporal (Corp.) Oscar Fuentes, Gause (Classification), and the Kern County Sheriff's Detention Department (collectively, "Defendants").

Plaintiff's allegations follow. On January 9, 2016, while Plaintiff was being held as a pretrial detainee, defendants Sgt. Graves, Corp. Fuentes, and Gause entered F-1 housing, instructed the inmates to stand against the wall, patted them down and sent them to the recreation yard. Defendants then searched the unit.

When the inmates returned from the yard, Sgt. Graves told them to line up in front of their cell doors. Plaintiff was on the second tier, cell 107. Someone yelled at the inmates to enter their cells when a fight broke out on the bottom tier between two inmates about fifteen yards away. Defendant Graves was between Plaintiff and the incident on the bottom tier. She (Graves) turned and as Plaintiff was entering his cell with his back to the inciden, defendant Gause fired a round from his pepper ball gun from 20 to 25 yards. Plaintiff heard a second round as his door closed behind him. Plaintiff believed that defendant Gause fired the first round, and defendant Graves fired the second round. Plaintiff was not a threat to anyone, not involved in the incident, and had his back to them.

Due to Plaintiff's federal civil suit being heard that day, and because he was being moved to Ad-Seg Isolation without a write-up or hearing, Plaintiff believed that Defendants' actions were in retaliation against him for filing an inmate grievance or complaint. What happed next convinced Plaintiff he was being retaliated against. Plaintiff was escorted by

defendant Fuentes and housed in a cell full of blood, urine, and feces, with vomit on the bed and writing with blood on the walls. Plaintiff was denied a dinner tray.

On January 9, 2016, Plaintiff submitted an inmate grievance and received a response stating that although he was not involved in the altercation he had caused a disturbance, which Plaintiff asserts is unfounded. Plaintiff was being labeled a 25er and caught a cold due to the unsanitary conditions of the cell. Plaintiff asked to receive Hepatitis and HIV blood tests.

On January 18, 2016, Plaintiff filed a second grievance. Plaintiff's cell was searched and he was released from Ad-Seg Isolation without any hearing or write-up.

Due to the timing and the involvement of detention deputies from Plaintiff's last federal suit, 1:15-cv-01697-AWI-MJS, where he named Gause and Fuentes as defendants, Plaintiff believes he was placed in Ad-Seg out of retaliation for filing civil suit 1:15-cv-01697-AWI-MJS. Plaintiff was also falsely labeled a Mano Neera, Mano Azul, and Mafioso member and placed at risk of harm by real security threat groups by his placement where they house security threat groups.

Plaintiff requests monetary damages.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v.

Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### A. Rights of Pretrial Detainees

Plaintiff was a pretrial detainee at the time of the events at issue. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pre-trial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Anderson v. Cnty. of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414-15 (9th Cir. 1986). For example, where the pretrial detainee is claiming that prison officials are liable for a breach of the duty to protect the detainee from attack by other inmates and detainees, the court should utilize Eighth Amendment standards. See Redman v. Cnty. of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc); see also Pierce, 526 F.3d at 1209-13 (explaining that detainees in administrative segregation are entitled under the First and Eighth Amendments to ongoing participation in religious activities and adequate opportunities for exercise); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (stating that Eighth Amendment establishes minimum standard of medical care for pretrial detainees).

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell v.

Wolfish, 441 U.S. 520, 538-39 (1979)); Pierce, 526 F.3d at 1205; Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

### B. Monell Liability -- Kern County Sheriff's Detention Department

Plaintiff names as defendant Kern County Sheriff's Detention Department, an agency of Kern County, California.

Municipalities cannot be held vicariously liable under Section 1983 for their employees' actions. Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...

42 U.S.C. § 1983. Liability is limited to the persons who caused the constitutional violations at issue. Id. Because the statutory language thus precludes vicarious liability, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Therefore, the county is not liable under § 1983 for the actions of its jail officials, and Plaintiff cannot proceed on a cause of action for vicarious liability or *respondeat superior* against Kern County or the Kern County Sheriff's Detention Department.

A municipality or other local government may be liable under Section 1983 if the governmental body "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. Monell, 436 U.S. at 691–92. A municipality or its agent may be liable under § 1983 for constitutional injuries caused by its policies, customs, practices, and or procedures that violate constitutionally protected rights. Id. at 691, 694. To impose liability

against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights (citing Gibson, 290 F.3d at 1193–94). A plaintiff must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality and not the actions of the employees of the municipality. Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011).

Here, Plaintiff has not identified any specific county policy as the moving force behind the violations of his rights, nor has Plaintiff made any allegations in the Third Amended Complaint against Kern County or the Kern County Sheriff's Detention Department. Therefore, Plaintiff fails to state a claim based on municipal liability.

### C. Due Process Claim -- No Hearing -- Adverse Conditions

A pretrial detainee may not be subjected to disciplinary action without a due process hearing to determine whether he has in fact violated a jail rule. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996); see also Bell, 441 U.S. at 535 (Fourteenth Amendment's Due Process Clause protects detainees from punishment prior to conviction); Wolff v. McDonnell, 418 U.S. 539, 564-565 (1974) (setting forth due process requirements for hearing prior to disciplinary action). Wolff requires that jail authorities allow an inmate who faces disciplinary proceedings and whose liberty interest is threatened to call witnesses in his defense, when permitting him to do so will not be unduly hazardous to institutional safety and correctional concerns. Mitchell, 75 F.3d at 525 (citing Wolff, 418 U.S. at 566.) Once a detainee has been placed in Ad-Seg, "prison officials must conduct some sort of periodic review of the confinement . . . ." Madrid v. Gomez, 889 F. Supp. 1146, 1278 (N.D. Cal. 1995).

Plaintiff alleges that he was detained in an unsanitary cell for ten days after an incident in which two other inmates in his unit were involved in an altercation, and this occurred

7

without being given a write-up or hearing before he was moved to the cell. After Plaintiff filed an inmate grievanc, he was released from Ad-Seg, without any hearing or write-up.

There is no due process right to be free from false disciplinary charges. There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against being falsely accused of causing a disturbance and being placed in Ad-Seg during the investigation.

Because plaintiff was a pretrial detainee and not a convicted prisoner at the time of the events alleged in his amended complaint, his § 1983 action challenging his conditions of confinement arises under the Due Process Clause of the Fourteenth Amendment and not from the Eighth Amendment prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pre-trial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Anderson v. Cnty. of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414-15 (9th Cir. 1986).

Under the Due Process Clause, pretrial detainees have a right not to be subjected to conditions which amount to punishment. Id. at 535–37. If a particular jail condition is reasonably related to a legitimate government objective, it does not amount to punishment

absent a showing of an express intent to punish. Id. at 538–39. Thus, pretrial detainees are protected "from conditions which in fact serve no valid purpose . . . but to inflict misery on them and thereby punish them." Martino v. Carey, 563 F.Supp. 984, 994 (D.Or. 1983) (citing Bell, 441 U.S. 520 at 538–39).

When a liberty interest has been implicated as the result of a disciplinary charge, the Fourteenth Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24–hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders of the evidence relied on for their decision and the reasons for the action taken by the committee. Wolff, 418 U.S. at 564–66; Freeman v. Rideout, 808 F.2d 949, 952 (9th Cir. 1986) ("Although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action are the procedural due process requirements as set forth in Wolff v. McDonnell.") (internal quotation marks omitted). Once these protections have been provided, due process is satisfied if there is any evidence in the record that could support the conclusion reached by the officials. Toussaint, 801 F.2d at 1104–05.

"Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson, 45 F.3d at 1314, opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995) (citing cases, see, e.g., Gee v. Estes, 829 F.2d 1005, 1006 (10th Cir. 1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); McCray v. Burrell, 516 F.2d 357, 366–69 (4th Cir. 1974) (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), *cert. denied,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); []; LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), *cert. denied,* 414

U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973)); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985).

A conditions of confinement claim may also arise from the type of "egregious circumstances" alleged by Plaintiff in this matter. Moak v. Sacramento Cty., No. 215CV0640MCEKJNP, 2016 WL 393860, at *3 (E.D. Cal. Feb. 2, 2016), report and recommendation adopted, No. 215CV0640MCEKJNP, 2016 WL 8731337 (E.D. Cal. Mar. 4, 2016) (citing Walker v. Schult, 717 F.3d 119, 127 (2nd Cir. 2013) (citing, *inter alia*, LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972)) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days); Wright v. McMann, 387 F.2d 519, 521-22, 526 (2d Cir. 1967) (placement in cell for thirty-three days that was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," combined with other conditions, would violate the Eighth Amendment)). The Ninth Circuit also has held the deprivation of food, drinking water, and sanitation for four days was sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Johnson, 217 F.3d at 732–733.

California's Code of Regulations, Title 15, § 3335(a) provides for an inmate to be retained in Ad-Seg during the pendency of an investigation, and the court finds this regulation serves a legitimate penological interest. See Wright v. Director of Corrections, 2011 WL 6729677, *4 (S.D.Cal., December 21, 2011). Therefore, Plaintiff's ten-day confinement during an investigation, without more, does not give rise to a protected liberty interest. However, the court finds no apparent valid purpose related to a legitimate government objective for housing Plaintiff in a cell full of blood, urine, and feces, with vomit on the bed and writing with blood on the walls for ten days. Therefore, the court finds that Plaintiff states a cognizable claim against defendant Fuentes for violation of his rights to due process, based on adverse conditions of confinement.

///

///

///

///

### D. Excessive Force -- Eighth Amendment Jurisprudence[1]

Plaintiff claims that excessive force was used against him when defendants Gause and Graves fired a pepper ball gun. (ECF No. 39 at 5.) "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff fails to show that any of the Defendants purposely used pepper balls against him, or that he was subject to any force. Plaintiff alleges that defendants Graves and Gause shot their pepper ball guns in Plaintiff's direction, but there are no facts showing that the pepper balls struck Plaintiff, that they were used to punish Plaintiff for anything he did, or that Plaintiff suffered any harm. Plaintiff has failed to allege or show that defendant Graves or defendant Gause applied force to him in a malicious and sadistic manner. To the contrary, Plaintiff's allegations indicate that the force used was applied in a good-faith effort to restore or

---

[1] As discussed above, a pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pre-trial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003); Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Anderson v. Cnty. of Kern, 45 F.3d 1310, 1312-13 (9th Cir. 1995); Maddox v. City of Los Angeles, 792 F.2d 1408, 1414-15 (9th Cir. 1986).

maintain discipline against the two inmates who were fighting. Plaintiff has not alleged that he suffered or sustained any serious injury as a result of Defendants shooting their pepper ball guns, or that the alleged force came close to consisting of the type of force that was "repugnant to the conscience of mankind" or constitutionally excessive under the Eighth Amendment. See Hudson, 503 U.S. at 9–10.

///

Therefore, Plaintiff fails to state an excessive force claim against any of the Defendants.

### E. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo

> v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendants Sgt. Graves and Gause shot at him, and that defendant Corp. Fuentes placed him in detention in retaliation for Plaintiff exercising his rights to file grievances and a court case. There is no question that shooting someone with pepper balls or pepper spray and placing him in detention is an adverse action. However, Plaintiff alleges no facts showing that defendants Graves or Gause meant to shoot at him or that the shooting was an adverse action against Plaintiff. It appears more likely that defendants were shooting pepper balls to gain control over the ongoing altercation between two other inmates. Therefore, the court finds that Defendants' actions were not adverse actions against Plaintiff.

Plaintiff satisfies the third element of a retaliation claim by his allegation that he exercised his First Amendment rights to file grievances and a court action. However, Plaintiff fails to satisfy the second element, because he has not shown that any adverse action was taken against him *because* he had exercised his First Amendment rights. Plaintiff's argument that the timing of the acts shows retaliation is unpersuasive. To state a claim for retaliation, Plaintiff must allege facts showing a connection between his exercise of protected rights and the adverse actions taken against him. Plaintiff has not done so. Therefore, Plaintiff fails to state a claim for retaliation against any of the Defendants.

### F. Deliberate Indifference to Safety -- Rule 18

Plaintiff alleges that he was falsely labeled a Mano Neera, Mano Azul, and Mafioso gang member and placed at risk of harm by real security threat groups when they housed him

with other gang members.

This claim was not included in Plaintiff's prior complaints for this case and appears to be unrelated to Plaintiff's other claims. Plaintiff may not proceed in one action with unrelated claims against different staff members. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff makes vague allegations that he was falsely labeled a gang member and housed with other gang members. Plaintiff has not alleged sufficient facts for the court to determine whether this claim is related to Plaintiff's other claims. Moreover, Plaintiff fails to state a claim because he has not named any defendant for this violation of his rights. Also, Plaintiff fails to allege when and how the events happened, who falsely labelled him as a gang member, what criteria was used, who housed him with gang members, and whether he suffered any harm. Plaintiff's facts are not sufficient to state a claim. Therefore, this claim shall be dismissed for failure to state a claim, with leave to amend the complaint to cure the deficiencies found by the court.

## V.     CONCLUSION AND RECOMMENDATIONS

For the reasons set forth, the court finds that Plaintiff's Third Amended Complaint states a cognizable due process claim against defendant Fuentes for subjecting Plaintiff to adverse conditions of confinement, but fails to state any other cognizable claims upon which relief may be granted under § 1983 against any of the Defendants.

Plaintiff has now filed four complaints with ample guidance by the court and has stated only one cognizable claim, against defendant Fuentes for placing him in an unsanitary cell. Plaintiff added a new claim to the Third Amended Complaint that appears unrelated to his other claims. For this reason, Plaintiff shall be granted leave to amend the complaint. However, this shall be Plaintiff's **final opportunity** to amend the complaint. In the alternative, Plaintiff may choose to proceed only on his claim against defendant Fuentes.

If Plaintiff chooses to file a Fourth Amended Complaint, he is advised that he may not add new defendants for unrelated claims, change the nature of the complaint, or add allegations of events occurring after he filed the original complaint on February 19, 2016.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a Fourth Amended Complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F. 3d at 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly

titled "Fourth Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Third Amended Complaint states a cognizable due process claim against defendant Fuentes, but no other cognizable claims;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

///

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File a Fourth Amended Complaint, curing the deficiencies in his claims identified by the court in this order; or
   (2) Notify the court that he does not wish to amend the complaint and he is instead willing to proceed only with the due process claim found cognizable by the court against defendant Fuentes, dismissing all other claims and defendants;
4. If Plaintiff chooses to amend the complaint, he shall caption the amended complaint "Fourth Amended Complaint" and refer to the case number 1:16-cv-00234-DAD-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to comply with the court's order.

IT IS SO ORDERED.

Dated: **August 20, 2018**       **/s/ Gary S. Austin**
                              UNITED STATES MAGISTRATE JUDGE