UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICO J. QUIROGA III,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SERGEANT GRAVES, et al.,<br><br>　　　　Defendants. | 1:16-cv-00234-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION TO AMEND BE DENIED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED (ECF Nos. 62, 72.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

**I.　PROCEDURAL HISTORY**

Monico J. Quiroga III ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on February 19, 2016. (ECF No. 1.) This case now proceeds with Plaintiff's Fourth Amended Complaint filed on September 6, 2018, against defendant Corporal Oscar Fuentez[1] for violation of due process under the Fourteenth Amendment.[2] (ECF No. 45.)

---

[1] Plaintiff spells Defendant's last name as "Fuentes," but Defendant spells it as "Fuentez." The court uses Defendant's spelling in this order.

[2] On December 18, 2018, the court dismissed all other claims and defendants from this case, based on Plaintiff's failure to state a claim. (ECF No. 49.)

On June 18, 2019, Defendant Fuentez filed a motion for summary judgment for Plaintiff's failure to exhaust administrative remedies. (ECF No. 62.) On July 29, 2019, Plaintiff filed an opposition to the motion along with a motion to amend the complaint. (ECF No. 72.) On July 30, 2019, Defendant filed a reply to Plaintiff's opposition. (ECF No. 73.) On July 31, 2018, Defendant filed an opposition to Plaintiff's motion to amend. (ECF No. 74.) Defendant's motion for summary judgment, and Plaintiff's motion to amend have been submitted upon the record without oral argument pursuant to Local Rule 230(*l*). For reasons that follow the court recommends that Plaintiff's motion to amend should be denied and Defendant's motion for summary judgment be granted.

## II. PLAINTIFF'S ALLEGATIONS

At the time of the events at issue, Plaintiff was a pretrial detainee at the Kern County Sheriff's Detention Facility, also known as the Kern County Jail in Bakersfield, California.

Plaintiff's allegations follow: On January 9, 2016, Sgt. Graves [not a defendant], defendant Corporal Fuentez, and Gause (classification officer) [not a defendant] entered F-1 housing and instructed the inmates to stand against the wall, patted them down and sent them to the recreation yard. The officers then searched the unit.

When the inmates returned from the yard Sgt. Graves told them to line up in front of their cell doors. Plaintiff was on the second tier, cell 107. Someone yelled at the inmates to enter their cells when a fight broke out on the bottom tier between two inmates about fifteen yards away. Sgt. Graves was between Plaintiff and the incident on the bottom tier. She (Graves) yelled, "Lock it up" and turned toward Plaintiff. As Plaintiff was entering his cell with his back turned Gause fired a round from his pepper ball gun from 25 yards away. When the door closed, Sgt. Graves fired a round at the vent.

Plaintiff was not a threat to anyone nor involved in the incident. Plaintiff believes he was retaliated against for a petition, grievance, or Federal Civil Suit 1:15-cv-01697-DAD being heard the same day, January 9, 2016, because defendants Gause and Fuentez were also defendants in the previous civil suit, and Plaintiff was moved 2 to 3 hours later and housed in administrative segregation without a write-up or hearing. What happed next convinced Plaintiff he was being

retaliated against. Plaintiff was escorted by defendant Fuentez and housed in a cell full of blood, urine and feces, with vomit on the bed and writing with blood on the walls. Plaintiff was also denied a dinner tray.

On January 9, 2016, Plaintiff submitted an inmate grievance and received a response stating that although he was not involved in the altercation he was investigated or labeled a 25er for a disturbance. Plaintiff caught a cold due to the conditions of confinement. Plaintiff asked to receive Hepatitis and HIV blood tests.

On January 18, 2016, Plaintiff filed a second grievance. Plaintiff's cell was searched and he was released from Ad-Seg Isolation without any hearing or write-up due to the deputies involved and the investigation. Plaintiff was also falsely labeled a Mano Neera, Mano Azul, and Mafioso member and placed in harm's way by real security threat groups.

Plaintiff requests monetary damages, a declaratory judgment, and a preliminary injunction.

### III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave, and the court should freely give leave when justice so requires. Id. Here, because Plaintiff has already amended the complaint and Defendant has not consented, Plaintiff requires leave of court to file a Fifth Amended Complaint.

When evaluating a motion to amend under Rule 15, the court considers: (1) whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party; (2) whether there have been repeated failures to cure deficiencies by previous amendments; (3) whether there has been undue prejudice to the opposing party "by virtue of the allowance of the amendment"; and (4) whether amendment would be futile. Sharkey v. O'Neal, 778 F.3d 767, 774 (9th Cir. 2015) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Although prejudice to the opposing

party "carries the greatest weight[,]. . . a strong showing of any of the remaining Foman factors" can justify the denial of leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

Furthermore, analysis of these factors can overlap. Springfield v. Voong, No. 2:18-CV-0016 DB P, 2019 WL 3564050, at *3–4 (E.D. Cal. Aug. 6, 2019). For instance, a party's "repeated failure to cure deficiencies" constitutes "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile[.]" Id. (quoting see Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of complaint with prejudice when there were "three iterations of [the] allegations — none of which, according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile)).

Here, Plaintiff seeks leave to amend the complaint to reinstate defendants Sergeant Brenda Graves, and Joshua Gause for their participation in the January 9, 2016 incident at issue in this case. Plaintiff has submitted a proposed Fifth Amended Complaint which the court has reviewed. (ECF No. 72 at 9.)

In opposition, defendant Fuentez asserts that the court already denied Plaintiff's attempts to bring claims against defendants Graves and Gause in March 2018 and August 2018, (ECF Nos. 37, 44), and argues that Plaintiff is attempting to plead prior allegations dismissed by the court for failure to state a claim.

**Discussion**

Plaintiff's allegations in the proposed Fifth Amended Complaint are not materially different from Plaintiff's allegations in the Fourth Amended Complaint. On October 15, 2018,

4

the undersigned entered findings and recommendations, recommending that defendants Graves and Gause be dismissed from the Fourth Amended Complaint based on Plaintiff's failure to state any claims against them. (ECF No. 47.) On December 18, 2018, the district court adopted the findings and recommendations leaving defendant Fuentez as the sole defendant in this action. (ECF No. 49.)

Plaintiff does not explain what has changed to cause his claims against defendants Graves and Gause to be cognizable now when they were not cognizable before. Plaintiff has now filed five complaints in this case with ample guidance by the court, and the court has found only one cognizable claim against defendant Fuentez. Plaintiff has repeatedly failed to cure the deficiencies in his claims against defendants Graves and Gause, and the court finds that any attempt to amend the complaint at this stage of the proceedings would be futile. Therefore, Plaintiff's motion to amend should be denied.

## IV. SUMMARY JUDGMENT BASED ON EXHAUSTION

### A. Legal Standards

#### 1. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218

(quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Jones, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Griffin, 557 F.3d at 1120; see also Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at the Kern County Jail where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca ("Albino II"), 747 F.3d 1162, 1172-73 (9th Cir. 2014). When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required

to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance). In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

### 2. Kern County Sheriff's Office (KCSO) Administrative Grievance System

The court takes judicial notice of the fact that KCSO provides its inmates the right to appeal administratively. Section 1073 of title 15 of the California Code of Regulations provides county jail inmates with a right to appeal and have resolved grievances relating to their confinement. Cal. Code Regs., tit. 15, § 1073. Regulations regarding inmate grievances require administrators of local detention facilities – such as KCSO – to develop "written policies and procedures" for processing and resolving inmate grievances about their conditions of confinement. Cal. Code Regs., tit. 15, § 1073(a); see also Albino II, 747 F.3d at 1182 ("Grievance procedures in California jails are promulgated under the direction of state laws and regulations.") (citing Cal. Penal Code § 6030(a); Cal. Code Regs., tit. 15, § 1073(a) ); Smith v. Tehama County Sheriff's Department, 2017 WL 1375234, *5 (E.D. Cal. Apr. 17, 2017) (county jails are required to "develop written policies and procedures whereby any inmate may appeal and have resolved grievances relating to any conditions of confinement[ ]") (quoting id.). Accordingly, the KCSO has established a multi-level process pursuant to Cal. Code Regs., tit. 15, § 1073, which is applied at the Kern County Jail, through which inmates may seek formal review of issues relating to conditions of confinement ("KCSO Detentions Bureau Policies and Procedures for Inmate Grievances").

Inmate grievances at KCSO facilities are governed by the Detentions Bureau. (Declaration of Lieutenant Gordon (Gordon Decl.), ECF No. 62-1, Exh. 2 at ¶ 2.) In accordance with KCSO Policy, an inmate may file a grievance related to any conditions of confinement, including but not limited to: "Medical and or mental health care, classification actions, disciplinary actions, program participation, telephone, mail, visiting procedures, food, clothing and bedding." (Id. Exh. 2A, Directive #1.) Inmates are notified of their ability to use the

grievance system during the intake process, and this notification is documented on a Grievance Acknowledgment Form. (Id.)

In most instances, a responding deputy will first attempt to resolve a grievance informally to the inmate's satisfaction. (Id., Directive #6.)  If a deputy cannot resolve an inmate's grievance and the inmate requests a grievance form, the deputy will give the inmate an inmate grievance form. Id. The inmate may file a formal written grievance by completing the form and returning it to a deputy. (Id.) The grievance form must include the name and booking number of the inmate submitting the grievance; the time, date, and location of the incident; the names of the persons involved; the issue the inmate is grieving, including a brief statement of the facts regarding the incident; and, the remedy being requested. (Id., Directive #6-A.)

The deputy shall read the grievance and log it in, completing the "Received By," "Date Received," and "Forwarded To" sections, and giving copies to the inmate and the on-duty shift supervisor. Id. If the grievance was submitted more than 10 days after the incident in question the supervisor will determine if there is good cause for the grievance to be late, but the 10-day rule does not apply to grievances alleging staff misconduct and all such grievances must be processed. Id. The Supervisor or Section Manager will respond to the grievance or assign staff to prepare a response, using the Answer to Inmate Grievance form, and respond to the grievance in writing as soon as practical, but no later than the response due date stamped on the inmate grievance. (Id., Directive #6-B-1.) The inmate shall sign the original response and be given a copy of the response. Id.

If the inmate wants to appeal the response, he is advised that he may write a letter to the section manager or submit a request slip with the "appeal box" marked. Id. Any staff member who receives an appeal to a grievance response will give the appeal to the on-duty shift supervisor who will place it in the facility grievance box. (Id., Directive #6-C.) The appeal is e-mailed to the appropriate supervisor or section manager for response. (Id.) Using the Appeal Response Form, the Supervisor or Section Manager will respond to the appeal as soon as possible but no later than the response date stamped on the appeal. (Id.) If the person responding is the section manager, he or she shall check the box at the bottom of the form that indicates the inmate has

exhausted his/her administrative remedies. (Id.) Copies of the grievance and response forms are kept in the inmate's file. (Id.) The response is delivered to the inmate. (Id.)

### 3. Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino II, 747 F.3d at 1168–69. Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[3] or (2) a motion for summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The

---

[3] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

In arriving at these findings and recommendations, this court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

B. **Undisputed Facts**

Unless otherwise noted the following facts are undisputed by the parties, or as determined by the court based on a thorough review of the record.[4]

1. Plaintiff was booked into jail on September 25, 2015. [Evid. Vol. Exhibit 1: Complaint pg. 2; Docket No. 1, pg. 9 of 17.]
2. Plaintiff alleges that while being housed as Pre-Trial Inmate on January 9, 2016, he was searched and placed into AdSeg, without a hearing or "due process." [Evid. Vol. Exhibit 1: Complaint pgs. 5-7; Docket No. 45, pgs. 5-7 of 8.]

---

[4] These facts are taken from Defendant's Statement of Undisputed Material Facts, ECF No. 62-2. The court has considered all declarations and exhibits submitted in support of each statement. Plaintiff failed to properly address Defendant's Statement of Undisputed Material Facts. Local Rule 260(b). Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion. Id; Fed. R. Civ. P. 56(e)(2).

3. Lieutenant Gordon is the supervisor of the Detentions Bureau Compliance Section and the Detentions Bureau Grievance Tracking System. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 6.]

4. Quiroga submitted grievances on twenty-five occasions while in the custody of the KSCO between his arrest date of 9/25/15 and his release date of 6/3/16. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 6.] [Evid/ Vol. Exhibit 2C.]

5. When Quiroga was in the custody of the KCSO prior to his arrest date of 9/25/15, Quiroga filed Grievances and received responses. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 7.] [Evid. Vol. Exhibit 2C.]

6. Between 3/22/15 and 9/13/15 Quiroga filed at least four Grievances to which Responses were issued. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 6.] [Evid. Vol. Exhibit 2D.]

7. Quiroga did not file a Grievance for a 01/09/16 due process violation by Fuentez. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 8.]

8. Quiroga had not filed an Appeal of any Response to a Grievance. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 6.]

9. The Detentions Bureau has formulated policies related to Inmate Grievances. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 3.]

10. The Detentions Bureau has I250 Inmate Grievance Tracking that manages, tracks and insures responses to inmate grievances. [Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶ 4.] [Evid. Vol. Exhibit 2B.]

**C.** **<u>Defendant's Motion for Summary Judgment</u>**

Defendant argues that the motion for summary judgment should be granted because Plaintiff failed to exhaust his available administrative remedies for his claim against defendant Fuentez.

First, Defendant argues that Plaintiff was aware of the grievance process but did not file an appeal of any Grievance Response associated with his due process claim against defendant Fuentez. Defendant asserts that Plaintiff was incarcerated with Kern County for fewer than eight

11

months, from September 25, 2015 until May 3, 2016, and during that time he filed twenty-five grievances. (Defendant's Evidence Volume ("Evid. Vol."), Exh. 2: Dec. of Lt. Gordon ¶ 6.) According to Defendant, none of the twenty-five grievances are related to or complain of violation of due process by defendant Fuentez on January 9, 2016. Defendant provides evidence that while in custody of the KCSO, Plaintiff filed at least four grievances between March 22, 2015 and September 14, 2015, and at least five grievances between January 9, 2016 and January 18, 2016. (Evid. Vol. Exh. 2: Dec. of Lt. Gordon, ¶ 7; Evid Vol. Exh. 2C.) Id. Defendant claims that Plaintiff did not file a grievance for a January 9, 2016 due process violation by defendant Fuentez, nor an appeal of any response to any grievance. (Evid. Vol. Exh. 2: Dec. of Lt. Gordon, ¶¶ 6, 8.)

Second, Defendant argues that Plaintiff was aware that his administrative remedies must be exhausted prior to the filing of an inmate § 1983 action because Plaintiff filed a motion to prove exhaustion of remedies in May 2018 in a concurrent case, Quiroga v. Cooper, 1:17-cv-00004-DAD-JDP. Importantly, Defendant asserts that Plaintiff has not alleged the filing of a grievance, exhaustion of remedies, or the receipt of a response and filing of an appeal in the Fourth Amended Complaint, or in any other motion filed.

Third, Defendant argues that administrative remedies were available to Plaintiff. Defendant asserts that KCSO's Detentions Bureau has formulated policies related to Inmate Grievances and has I250 Inmate Grievance Tracking that manages, tracks and insures responses to inmate grievances. (Evid. Vol. Exh. 2: Dec. of Lt. Gordon, ¶¶ 3, 4; Evid. Vol. Exh. 2A.) In addition, Defendant asserts that Plaintiff was clearly familiar with the KCSO grievance process and had repeatedly made use of it prior to January 9, 2016. Lieutenant Anthony Gordon, supervisor of the Detentions Bureau and Tracking System, conducted diligent searches of all the pertinent records of the KCSO and located twenty-five grievances from Plaintiff for the period between his September 25, 2015 booking and his release on May 3, 2016; four grievances between March 22, 2015 and September 14, 2015; and at least five grievances between January 9, 2016 and January 18, 2016. (Evid. Vol., Exh. 2: Dec. of Lt. Gordon ¶¶ 6, 7.)

///

### D. Defendant's Burden

The court finds that Defendant has carried his initial burden to prove that there was an available administrative remedy and that Plaintiff failed to exhaust that remedy. Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his due process claim against defendant Fuentez, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

### E. Plaintiff's Opposition

Plaintiff claims that the filing of his § 1983 case proves exhaustion of administrative remedies because no action can be filed without first exhausting remedies with respect the PLRA. In support of his opposition to the motion for summary judgment, Plaintiff has submitted two grievances and the responses thereto, one submitted on January 9, 2016 and answered on January 13, 2016, and the other submitted on January 18, 2016 and answered on January 19, 2016. (ECF No. 72 at 4-7.) Plaintiff argues that he did not need to "press on to exhaust further level of review by [the] Administration." (ECF No. 72 at 2.) He refers to case law holding that a prisoner exhausted where he received a proper response stating the matter had been investigated, Brown, 422 F.3d at, 935. (Id.)

### F. Discussion

This case now proceeds with Plaintiff's Fourth Amended Complaint, filed on July 6, 2018, against defendant Corporal Fuentez on Plaintiff's claim for violation of due process under the Fourteenth Amendment. With respect to this claim, Plaintiff alleges as follows in the Fourth Amended Complaint:

> I was on the top tier cell 107, 2nd floor. We were then yelled at to enter our cells. As we began, a fight broke out on the bottom tier between 2 inmates or detainees . . . They were 15 yards away and on the bottom tier. . . As I was entering my cell with my back turned, Gause [not a defendant] fired a round from his pepper ball gun . . . and when the door closed, Sgt. B. Graves [not a defendant] fired a round at the vent. I was no threat or involved in the incident.
> . . . .
>
> [I was] moved 2 to 3 hours later and [] housed in Administrative Segregation or Isolation cell, without a write up or hearing. . . I was escorted by Corp. O. Fuentes and housed in a cell full of blood urine, & feces on the floor and walls, throw up

> on top [of the] bed, writing in blood, feces on wall. I was denied a dinner tray. I then put inmate grievance 1-9-16 & received a response stating although I was not involved in the altercation I was being investigated or labeled a 25er and was a disturbance. I then caught a cold due to condition of confinement. I then asked to receive Hepatitis & H.I.V blood test. I then placed a second grievance 1-18-2016. My cell was searched and I was released from Ad-Seg Isolation without a hearing or write up, due to deputies involved and previous incident where I was investigated and isolated in Ad-Seg.

(ECF No. 45 at 4-6.)

In the court's screening order issued on October 15, 2018, the undersigned found that Plaintiff stated a cognizable claim against defendant Fuentez for violation of due process based on allegations that Plaintiff was placed in a cell full of blood, urine, and feces on the floor and walls, with vomit on the bed and writing with blood on the walls for nearly ten days. (ECF No. 47 at 8:27-9:4.) The undersigned entered findings and recommendations, recommending that all other claims and defendants be dismissed based on Plaintiff's failure to state a claim. (ECF No. 47.) On October 29, 2018, Plaintiff filed written notice that he was willing to proceed only with the claim against defendant Fuentes found cognizable by the court. (ECF No. 48.) The district court issued an order on December 12, 2018, adopting the recommendations. (ECF No. 49.) Therefore, this case now proceeds on only one claim against defendant Fuentez for violation of due process based on allegations that Plaintiff was placed in a cell full of blood, urine, and feces on the floor and walls, with vomit on the bed and writing with blood on the walls for nearly ten days.

Plaintiff argues that the two grievances he filed, Grievances Nos. 3210 and 3230, exhausted his administrative remedies. The grievances and responses to the grievances provide as follows:

**<u>Grievance No. 3210, filed on January 9, 2016</u>**

> On Jan. 9, 2016, I was searched by Sgt. Graves and Corporal Fuentes, Corporal Madera, Gauze at about 1 or 2 in the afternoon upon entering F-1. 2 inmates began to fight, F-104 & F-106. We were yelled at to return to our cells and upon entering, Sgt. Graves fired shots from his pepper ball gun, striking the door as it closed. At this time I looked out the window of my cell and Sgt. Graves continued yelling. At this time I told . [*not legible*] . up and choke on that because she was choking on pepper ball. She was on the bottom tier and I was in my cell F-107 located upstairs and the fight was on the bottom tier approximately 30 feet away. Sgt. Graves was 15 feet away from my cell. I was then placed in Ad-Seg. I would like to be put back on G population, due to me not being involved in the altercation.

(ECF No. 72 at 4.)

**Response to Grievance No. 3210, dated January 13, 2016**

> Although you were not involved in the altercation where the two inmates were fighting you caused your own disturbance. In reviewing the incident report and talking with staff that were on scene, you left out the fact that you were inciting staff. By yelling f**k you and 25, you brought attention towards yourself, which required a response. Based on your actions, you were found to be unfit for general population housing at that time. We can't allow anyone to incite staff then remain in their housing. Based on your actions the result was you were re-classified to ad-seg status and rehoused. If you want the option to house in general population housing again you will need to follow the in-custody rules and orders from staff. Classification staff will review your status at a minimum of every 30 days.

(Id. at 5.)

**Grievance No. 3230, filed on January 18, 2016**

> On January 9, 2016, an incident happened and I was placed in Ad-Seg. On January 14, 2016, I received an answer to my grievance stating I'm a 25er gang member. F**k 25er, you are falsely labeling me putting my safety in danger by stating that. Libel and slander falls on the author of the writer. I never received incident report. I'm being illegally held in Ad-Seg violating my civil rights, retaliation for 42 U.S.C. § 1983 complaint cv-01697-AWI-MJS against classification. Relief: To go back to F-1 population and 25 label taken off my class file and to receive copy of class file, no First Amendment violation, VIII Amendment, VI Amendment. And Sheriffs to be held accountable for libel and slander. Second one on this matter because I wasn't given yellow copy of first one dated 1-17-16. Thank you.

(Id. at 6.)

**Response to Grievance No. 3230, dated January 19, 2016**

> In your grievance answer there was nothing that stated you are a 25 gang member. It referenced you were yelling "25" and "F**k You." You are classified as a PC based on your SNY status with CDCR. I will have our Gang Unit come interview you to get your updated gang status.

(Id. at 7.)

Defendant's evidence shows that administrative remedies were available to Plaintiff because the jail had an established policy that allowed inmates to file written grievances about the conditions of their confinement. (Evid. Vol. Exhibit 2: Dec. of Lt. Gordon, ¶¶ 3, 4; Evid. Vol. Exhibit 2B.) Defendant has also shown that Plaintiff was aware of the grievance process because he had filed many grievances at the jail before the January 9, 2016 incidents occurred. (Evid. Vol., Exh. 2: Dec. of Lt. Gordon ¶¶ 6, 7; Evid Vol., Exh. 2C.) Defendant also presents evidence that Plaintiff never filed an appeal after receiving a response to his grievances. (Evid.

Vol., Exh. 2: Dec. of Lt. Gordon ¶ 6.) Plaintiff does not argue that he was not informed about the grievance process, or that he did not know he was required to file an appeal to exhaust his remedies. Plaintiff instead appears to argue that he exhausted his remedies because he was awaiting the results of an investigation after he filed Grievance No. 3210, or because he was released from Ad-Seg after he filed Grievance No. 3230. See Brown, 422 F.3d 926 (awaiting the results of investigations triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement) (a prisoner need not press on to exhaust further levels of review once he has either received all "available" remedies at an intermediate level of review).

The court finds that Plaintiff failed to exhaust his remedies because he never filed a grievance addressing the claim upon which this case proceeds. Neither of the two grievances referenced above address Plaintiff's allegations that he was held for nearly ten days in a cell full of blood, urine, and feces on the floor and walls, with vomit on the bed and writing with blood on the walls. The unsanitary conditions of Plaintiff's cell are the basis of the due process claim upon which this case proceeds. Plaintiff's two grievances focus on Plaintiff's complaints that he was not involved in the inmate altercation and should not have been held in Ad-Seg without a write-up or hearing during the prison investigation. However, these complaints are not the basis of the claim found cognizable by the court. The screening order issued by the court on October 15, 2018 states:

> Plaintiff's ten-day confinement during an investigation, without more, does not give rise to a protected liberty interest. However, the court finds no apparent valid purpose related to a legitimate government objective for housing Plaintiff in a cell full of blood, urine, and feces on the floor and walls, with vomit on the bed and writing with blood on the walls for nearly ten days.

(ECF No. 47 at 8:27 - 9:2.)

Therefore, the claim at issue here is based on the unsanitary condition of Plaintiff's cell, which is not mentioned in Plaintiff's grievances. Even if the court found that Plaintiff's grievances were sufficient to place prison officials on notice that he was being wrongfully held, which may have led to officials learning of the unsanitary conditions, the grievances themselves do not alert "the prison to the nature of the wrong for which redress is sought" in this case, Sapp, 623 F.3d at 824, with respect to Plaintiff's claim that he was placed in an unsanitary cell.

Moreover, Plaintiff affirmatively chose not to proceed with his claim that he was being wrongfully held when he notified the court in writing that he wished to proceed only on the claim found cognizable by the court. Even "draw[ing] all reasonable inferences in the light most favorable to [Plaintiff]," Comite de Jornaleros de Redondo Beach, 657 F.3d at 942, the court cannot find that Plaintiff's grievances were sufficient to notify officials that the Ad-Seg cell was grievously unsanitary.

Based on the above, the court finds that Plaintiff did not exhaust his administrative remedies for the claim at issue in this case. Therefore, Defendant's motion for summary judgment should be granted and this case should be dismissed.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his due process claim against defendant Fuentez, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Therefore, Defendant's motion for summary judgment, filed on June 18, 2019, 2017, should be granted and this case should be dismissed without prejudice.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's motion to amend, filed on July 29, 2019, be DENIED;
2. Defendant Fuentez's motion for summary judgment, filed on June 18, 2019, be GRANTED;
3. This case be DISMISSED, without prejudice, for Plaintiff's failure to exhaust administrative remedies before filing suit; and
4. The Clerk be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file

objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 20, 2019**        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE